ANIMAL LEGAL DEFENSE
FUND, INC., Plaintiff,

v.

DEPARTMENT OF THE AIR
FORCE, Defendant.

Civil Action No. 96–01522(CKK).

United States District Court,
District of Columbia.

Feb. 16, 1999.

Valerie J. Stanley, Animal Legal Defense Fund, Inc., Rockville, MD, for plaintiff.

R. Craig Lawrence, Assistant United States Attorney, Washington, DC, for defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

The Animal Legal Defense Fund ("ALDF"), a non-profit membership organization based in California, has brought an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the Department of the Air Force to release documents pertaining to its plans to divest itself of over 140 chimpanzees. Pending before the Court are the Air Force's Motion for Summary Judgment, the ALDF's opposition thereto, and the Air Force's reply. Additionally, ALDF has moved to have this Court conduct an *in camera* review of the documents that the Air Force has withheld. That motion also has precipitated opposition and reply briefs from the respective parties. For the reasons set forth below, the Court denies the Air Force's Motion for Summary Judgment and the ALDF's Motion for *in camera* Inspection.

### I. BACKGROUND

To facilitate its aeronautical research during the 1950s and 1960s, the Air Force assembled and maintained a colony of chimpanzees that it used to conduct various experiments. While continuing to harbor this collection of chimpanzees and their offspring, beginning in 1970, the Air Force elected to permit private and public organizations to use the animals for non-military experiments. By 1991, however, the Air Force Chief of Staff had determined that it was no longer "appropriate to continue maintaining an Air Force owned chimpanzee colony." Def.'s Mot. for Summ. J. ("Def.'s MSJ"), Decl. of Arthur L. Money ¶ 9. Organizing what became known as the Chimpanzee Divestment Tiger Team, the Chief of Staff sought studies and recommendations on how to dispose of the chimpanzees. During the summer of 1993, the Air Force

disbanded the Chimpanzee Divestment Tiger Team. After a series of unsuccessful attempts by the Air Force to divest itself of the animals, Congress entered the fray. Pursuant to the National Defense Authorization Act for Fiscal Year 1997, Pub.L. No. 104–201, the Air Force must conduct a competitive negotiated disposal process to divest itself of the chimpanzees and the Primate Research Complex at Holloman Air Force Base, New Mexico, where the vast majority of its chimpanzees are housed.

On April 27, 1995, the ALDF submitted its FOIA request to the Air Force. Six months later, the Air Force provided only thirty-two pages of responsive documents to the ALDF; it claimed that, though additional responsive documents existed, they were being withheld pursuant to Exemptions 4 and 5. *See* 5 U.S.C. § 552(b)(4)–(5). By letter dated November 28, 1995, the ALDF appealed the Air Force's denial, which the Air Force did not acknowledge until May 2, 1996. Without having received any further response from the Air Force, the ALDF filed the present action on June 27, 1996. Several months after the ALDF initiated litigation, the Air Force released an additional 283 pages of redacted and unredacted documents. The Air Force maintains that it has validly withheld or redacted information pursuant to Exemptions 4, 5, and 6. *See id.* § 552(b)(4)–(6).

## II. DISCUSSION

Unless requested records fit within one or more of nine specific exemptions, FOIA "requires agencies to comply with requests to make their records available to the public." *Oglesby v. United States Dep't of Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996). This Circuit has "repeatedly underscored, however, that the agency invoking a FOIA exemption bears the burden of 'establishing its right to withhold evidence from the public.'" *Senate of the Commonwealth of P.R. v. United States Dep't of Justice,* 823 F.2d 574, 585 (D.C.Cir.1987) (quoting *Coastal States Gas Corp. v. Department of*

*Energy,* 617 F.2d 854, 861 (D.C.Cir.1980)) (brackets omitted). Moreover, even when a document falls properly within the ambit of an exemption, the agency must nevertheless release "any reasonably segregable portion" after deleting the nondisclosable portions. *See* 5 U.S.C. § 552(b).

██ To enable this Court to conduct a meaningful review of the propriety of an agency's claimed exemptions, the D.C. Circuit has held that "the Act also requires an agency in possession of material it considers exempt from FOIA to provide the requestor with a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby,* 79 F.3d at 1176. Accordingly, the *Vaughn* index and "the agency affidavits must ... disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. U.S. Department of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987). "The agency must provide a *Vaughn* affidavit explaining its reasons for withholding the documents so as to alert the FOIA requester to the nature of the documents and the claimed exemptions and allow the requester to challenge the agency's assertions." *Spirko v. United States Postal Serv.,* 147 F.3d 992, 997 (D.C.Cir.1998).

### A. *Exemption 5*

Asserting the deliberative-process privilege, the work-product privilege, and the attorney-client privilege, the Air Force has withheld several documents under the rubric of Exemption 5, which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). Pellucid and well-established precedent in this Circuit, however, compels this Court to deny the Air Force's motion for summary judgment. First, the Air Force has failed to submit a sufficiently detailed *Vaughn* index and agency affidavit that demonstrate as a matter of law that it is entitled to judgment on its Exemption 5 claims. Second, by averring in the most conclusory terms

that it has segregated all non-exempt material, the Air Force has not effectively discharged its duty under § 552(b).

### 1. Deliberative Process

██ The deliberative-process privilege permits an agency to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). To satisfy its burden of establishing its "right to withhold evidence from the public," *Coastal States,* 617 F.2d at 861, the Air Force must demonstrate that two elements exist within each of the documents withheld under the deliberative-process privilege: (1) the material must be predecisional and (2) it must be deliberative. *See Tax Analysts v. IRS,* 117 F.3d 607, 616 (D.C.Cir.1997); *Army Times Publishing Co. v. Department of the Air Force,* 998 F.2d 1067, 1070 (D.C.Cir.1993); *Wolfe v. Department of Health & Human Servs.,* 839 F.2d 768, 774 (D.C.Cir.1988) (en banc). To be predecisional, the document must "precede[ ], in temporal sequence, the 'decision' to which it relates," *Hinckley v. United States,* 140 F.3d 277, 284 (D.C.Cir.1998) (quoting *Senate of the Commonwealth of P.R.,* 823 F.2d at 585); to be deliberative, it must "reflect[ ] the give-and-take of the consultative process." *Id.* "Both requirements stem from the privilege's 'ultimate purpose, which is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case,* 121 F.3d 729, 737 (D.C.Cir.1997) (quoting *Sears,* 421

U.S. at 151, 95 S.Ct. 1504) (internal brackets omitted).

██ The Court need not reach the predecisional issue [1] because the Air Force has failed to establish that the documents contributed to the deliberative process. To demonstrate that withheld documents played a part in the "give-and-take" of agency decisionmaking, the Air Force "must establish 'what deliberative process is involved, *and the role played by the documents in issue in the course of that process.*'" *Senate of the Commonwealth of P.R.,* 823 F.2d at 585–86 (quoting *Coastal States,* 617 F.2d at 868) (emphasis added). Although the Air Force has identified the deliberative process at issue, *i.e.,* the chimpanzee divestment issue, it has utterly failed to specify the role played by each withheld document in the course of developing that policy. As a general rule, "an agency in possession of material it considers exempt from FOIA [must] provide the requestor with a *description of each document being withheld, and an explanation of the reason for the agency's nondisclosure.*" *Oglesby,* 79 F.3d at 1176 (emphasis added). The need to describe each withheld document when Exemption 5 is at issue is particularly acute because "the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Coastal States,* 617 F.2d at 867.

██ Despite these clear requirements, the Air Force offers not a single description of any of the withheld documents. All that the Air Force has provided the ALDF and this Court are a conclusory affidavit and copies of the redacted

---

1. In addressing the predecisional inquiry, the ALDF suggests that regardless of whether these documents preceded an eventual Air Force policy, they may not be withheld because the Air Force has already decided on its final policy and has no plans to revisit it. The Supreme Court, however, has already rejected this argument. Observing that government debate will be chilled if officials fear that their discussions will ultimately be exposed to the public eye, the Court held that

"[i]t follows that documents shielded by executive privilege remain privileged even after the decision to which they pertain may have been effected, since disclosure at any time could inhibit the free flow of advice, including analysis, reports, and expression of opinion within the agency." *Federal Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 360, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979).

documents at issue that boast handwritten annotations to the claimed exemptions. One would search in vain through any of the materials that the Air Force has submitted for a single description of any of the forty-nine documents. Although, of course, the agency need not provide a description so rich in detail that it reveals the purportedly exempt information, this Circuit has consistently recognized that "[t]he description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Oglesby,* 79 F.3d at 1176; *see also King v. U.S. Department of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987); *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973). Notably absent from any of the affidavits or *Vaughn* index are "two factors that can assist the court in determining whether this [deliberative-process] privilege is available: the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document,' and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." *Senate of the Commonwealth of P .R.,* 823 F.2d at 586 (quoting *Taxation with Representation Fund v. IRS,* 646 F.2d 666, 678 (D.C.Cir.1981); *Arthur Andersen & Co. v. IRS,* 679 F.2d 254, 258 (D.C.Cir.1982)).

■ "Exemption 5, and the deliberative process privilege, reflect the legislative judgment that 'the quality of administrative decisionmaking would be seriously undermined if agencies were forced to operate in a fish-bowl because the full and frank exchange of ideas on legal or policy matters would be impossible.'" *Tax Analysts,* 117 F.3d at 617 (quoting *Mead Data Central, Inc. v. U.S. Department of the Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977)). Accordingly, the Air Force must demonstrate that disclosing the withheld documents "would actually inhibit candor in the decision-making process if made available to the public." *Army Times,* 998 F.2d at 1072. To underscore the inadequacy of

the Air Force's evidence on this point, it is useful to examine a passage from this Circuit's holding in *Army Times,* which rejected the Air Force's conclusory claims of damage to agency candor:

> This claim rests entirely on the affidavits of Major Roomsburg. Parroting the case law, Major Roomsburg states in her first affidavit that "[a]ny disclosure of the information withheld would impair the deliberative process of the Air Force by inhibiting full and frank exchange of views necessary with respect to such matters."

*Id.* at 1070. Strikingly similar to the defective affidavit submitted by Major Roomsburg in *Army Times,* the declaration of Assistant Secretary of the Air Force, Arthur L. Money, in the case at bar states: "Public disclosure of the Air Force's deliberations about divestment issues would have a chilling effect on the free and frank discussions necessary to arrive at an appropriate solution for the chimpanzees' divestment from the Air Force." Def.'s MSJ, Decl. of Money ¶ 22. Such a conclusory assertion, especially when coupled with the Air Force's failure to describe any of the documents and explain how they factored into the deliberative process, militates against granting summary judgment to the Air Force.

In *Senate of the Commonwealth of Puerto Rico,* this Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of 'conclusory assertion,'" noted that "it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of the Commonwealth of P.R.,* 823 F.2d at 585 (Ginsburg, Ruth Bader, J.). Interestingly, although in that case the Department of Justice had provided "each document's issue date, its author and intended recipient, and the briefest of references to its subject matter," *id.,* the D.C. Circuit still found the agency's proof to be "conclusory." Here, the Air Force has not even done that much; nothing in

Money's declaration or the *Vaughn* index provides dates or indicates the titles and positions of the documents' authors and recipients, much less describes in any way the subject matter of each document.

### 2. Segregability

■ FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Put to practice, "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). So important is the segregability inquiry under FOIA that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller v. NLRB,* 964 F.2d 1205, 1210 (D.C.Cir.1992) (quoting *Church of Scientology v. U.S. Department of the Army,* 611 F.2d 738, 744 (9th Cir.1979)).

■ In his declaration, Money attempts to dispose of the segregability issue with the single averment that no withheld document was "reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material." Def.'s MSJ, Money Decl. ¶ 17. This unsophisticated parroting of FOIA's statutory language is patently insufficient. Such a blanket, conclusory statement defies the well-established precedent that governs an agency's obligation to segregate nonexempt material:

> [T]he withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *corre-lating those claims with the particular part of a withheld document to which they apply.*'

*King v. U.S. Department of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987) (emphasis added). This Circuit recently has held that when faced with a conclusory agency affidavit claiming that all reasonably segregable information has been disclosed, "[n]either the [plaintiff] nor the court ... is obliged to accept that conclusion *without more specification of the types of material in the file.*" *Kimberlin v. DOJ,* 139 F.3d 944, 950 (D.C.Cir.1998) (emphasis added). Like the declaration of Money, the agency declaration in *Kimberlin* failed to "specify in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn,* 484 F.2d at 827.

Moreover, that the documents requested by the ALDF spring from a potentially controversial policy does not insulate the Air Force from FOIA's segregability command or permit it to submit vague, non-specific declarations about segregability. In *Armstrong v. Executive Office of the President,* 97 F.3d 575 (D.C.Cir.1996), a case that touched upon sensitive foreign intelligence and national security, the D.C. Circuit affirmed the district court's determination that the government affidavits demonstrated with "reasonable specificity" why the documents could not be further segregated. *See id.* at 578. There, however, the government heeded *Schiller's* rule that "requires the agency to correlate claimed exemptions with particular passages [within each document]." *Id.* In contrast to the Air Force's submissions in this case, in *Armstrong,* the government justified its inability to segregate by describing the documents' general subject matter and the reasons why further segregation was impossible. In one document, for example, the government averred that it could not segregate any portion "because it discusses throughout intelligence data as well as cooperative counter-terrorist actions flowing from that intelligence." *Id.* The Circuit also recognized the sufficiency of the agency's rationale for refusing to segregate in another document: "This note consists of an extensive review of numerous intelligence cables, revealing

one piece of specific intelligence after another. Accordingly, there are no further intelligible, non-classified portions which can be segregated." *Id.* at 579.

■ By no means rich with detail or lavish with compromising revelations, the government's affidavits in *Armstrong* were "reasonably specific" to permit the district court to make intelligent findings about segregability as to each document withheld. No such "specificity" lurks within Money's declaration or the corresponding *Vaughn* index in this case. Therefore, if the Air Force continues to withhold documents from the ALDF based on Exemption 5's deliberative-process privilege, it shall strictly adhere to these instructions: First, for each document in which information has been redacted or withheld based on Exemption 5, the Air Force shall "'specify in detail which portions of the document are disclosable and which are allegedly exempt.'" *Schiller,* 964 F.2d at 1210 (quoting *Vaughn,* 484 F.2d at 827). Second, in doing so, the Defendant shall not offer one finding for *all* documents; rather, the Defendant shall make specific findings for *each* document withheld. The Air Force is advised that it should consider the agency affidavits in *Armstrong* to be a model that it should emulate when describing the contents of documents and the ability to segregate redacted material further. Finally, the Air Force shall "correlate claimed exemptions with particular passages." *Schiller,* 964 F.2d at 1209.

### 3. Work-product and attorney-client privileges

■ The Air Force invoked the work-product privilege component of Exemption 5 to withhold one document, and invoked the attorney-client privilege to withhold a different document. Both claims, like the Air Force's deliberative-process claim, fail for lack of proof on essential elements. Looking initially to the work-product privilege, that doctrine "does not extend to every written document generated by an attorney." *Jordan*

*v. United States Dep't of Justice,* 591 F.2d 753, 775 (D.C.Cir.1978) (en banc). Rather, its protections extend only to documents that have been prepared "in contemplation of litigation." *Sears,* 421 U.S. at 154, 95 S.Ct. 1504; *Coastal States,* 617 F.2d at 864. Money's declaration devotes only a single, spare sentence to justify the Air Force's work-product claim: "In addition to the deliberative process privilege, and the attorney-client privilege, attorney work product material was withheld in order to protect documents and other memoranda prepared by an attorney in contemplation of litigation." Def.'s MSJ, Money Decl. ¶ 24. This Circuit has previously found inadequate an agency's conclusory assertion that a withheld document was prepared by attorneys "in anticipation of litigation." *Senate of the Commonwealth of P.R.,* 823 F.2d at 586. By failing to describe even in the most general of details the document's subject matter or identifying the litigation that the agency anticipated—that is to say, by failing to provide a single fact—the Air Force may not obtain judgment as a matter of law on this claim.

■ Turning to the attorney-client privilege, this Circuit has held that the privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. *In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts,* 117 F.3d at 618. To prevail on its attorney-client privilege claim, therefore, the Air Force must establish that the information conveyed formed part of a confidential communication to or by an attorney in the course of a professional relationship. *See Mead Data Central,* 566 F.2d at 258. Again, Money's declaration simply paraphrases in conclusory terms the formal legal requirements: "[I]nformation concerning confidential communication between an Air Force attorney and her client relating to a legal matter for which the Air Force sought

advice was withheld in order to ensure that Air Force officials continue to receive sound legal advice and advocacy from their attorneys." Def.'s MSJ, Money Decl. ¶ 23. Conspicuously absent from this sentence are any facts to substantiate the Air Force's claim of privilege. Nor is there any description of the document's general subject matter—a requirement, by the way, imposed on any civil litigant who prepares a privilege log—which is essential if this Court is to perform effectively its review of the agency's proffered exemptions. Without a better record, judgment cannot be granted.

### B. *Exemption 4*

■ Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). Invoking Exemption 4, the Air Force withheld two documents, each of which allegedly is a proposal for divestment tendered in confidence to the Air Force by Coulston International Corporation ("CIC"). "The test for whether information is 'confidential' depends in part on whether the information was voluntarily or involuntarily disclosed to the government." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 281 (D.C.Cir.1997). Where the information was disclosed voluntarily, it will be considered confidential "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C.Cir.1992) (en banc).

In its Motion for Summary Judgment, the Air Force claims that because CIC submitted these proposals voluntarily, instead of under government compulsion, the documents were properly withheld pursuant to Exemption 4 based on *Critical Mass*. Although *Critical Mass* fashioned a less stringent standard to justify withholding documents that have been voluntarily submitted to government agencies, it cer-

tainly did not liberate agencies from their burden of proving that all essential elements of the exemption exist. To prevail under the *Critical Mass* standard, the agency must demonstrate that the withheld documents: (1) contain financial or commercial information; (2) were submitted voluntarily; and (3) are "confidential"; that is, they are "of a kind that would customarily not be released to the public by the person from whom [they] w[ere] obtained." *Id.* at 879.

■ Based on Money's declaration, it is not clear that the Air Force has satisfied any of the three elements. First, though Money states that CIC's proposals contain "commercial and financial information," he never offers any general description of the documents to permit the ALDF or this Court to test the accuracy of that claim. Yet even were that proffer sufficient to satisfy the first prong of *Critical Mass*, Money's declaration falls short on the remaining two requirements. While the Air Force's Motion for Summary Judgment suggests that CIC submitted its proposals voluntarily, *see* Def.'s MSJ at 5, nowhere in his declaration does Money aver that CIC's submissions came to the Air Force "voluntarily." Finally, and most glaring, Money never indicates whether CIC does not customarily release such information to the public. It is worth noting that unless Money would have personal knowledge about CIC's customary practices, the Air Force will need an affidavit from an officer of CIC to satisfy this final element of *Critical Mass*. *See* FED.R.CIV.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge....."). Accordingly, the Air Force's Motion for Summary Judgment with respect to Exemption 4 is denied.

### C. *Exemption 6*

It is not clear that there exists any controversy over the Air Force's Exemption 6 claims. The Air Force maintains that it has applied Exemption 6 only to withhold the identities of individuals.

While the ALDF does not seek the names and identifying information of individuals, it suggests that the Air Force may have invoked Exemption 6 to withhold the names of certain corporations that bear the eponymous name of their founder—the Coulston International Corporation being a prime example. The Air Force, in its reply brief, clarified that it has withheld Coulston's name only when it appears as any other individual's name; it has not withheld entities named after Coulston. Indeed, many of the records identify without redaction Coulston International Corporation. Accordingly, there appears to be no issue to adjudicate with respect to Exemption 6.

### D. In camera *Inspection is not Warranted*

Due largely in part to the Air Force's abject failure to provide a proper Vaughn index and affidavit that describe the withheld documents in sufficient detail, and make adequate segregability findings with respect to *each* document, the ALDF has moved for *in camera* inspection of several representative documents. Although the ALDF"s concerns are understandable, the D.C. Circuit "has repeatedly observed that a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn.*" *Spirko v. United States Postal Serv.,* 147 F.3d 992, 997 (D.C.Cir.1998); *see also PHE, Inc. v. DOJ,* 983 F.2d 248, 251–53 (D.C.Cir.1993); *Schiller,* 964 F.2d at 1209; *Lykins v. United States Dep't of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984). Instead,

> [t]he district court 'should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions.' The agency must provide a *Vaughn* affidavit explain-

ing its reasons for withholding the documents so as to alert the FOIA requester to the nature of the documents and the claimed exemptions and allow the requester to challenge the agency's assertions.

*Spirko,* 147 F.3d at 997 (citation omitted).

■ Because *"in camera* review should not be resorted to as a matter of course, simply on a theory that 'it can't hurt,'" *Quiñon v. FBI,* 86 F.3d 1222, 1228 (D.C.Cir.1996), the Court denies the ALDF"s motion. By permitting the Air Force to submit a more detailed affidavit and *Vaughn* index in order to comply with the law of this Circuit, the Court advances several salutary interests. First, if the Air Force submits proper documentation, there will be no need to perform an *in camera* inspection—avoiding the large tax on judicial resources that invariably attends such a procedure. *See Quiñon,* 86 F.3d at 1228. Second, a proper affidavit and *Vaughn* index will allow the ALDF to respond intelligently to the Air Force's claimed exemptions, and move for summary judgment in their own right. *See id.* Finally, to resort to an *in camera* inspection now might deprive this Court's ultimate decision of "meaningful review by an appellate court." *Spirko,* 147 F.3d at 997.

Although the Court has denied ALDF"s request, let there be no misunderstanding about the Air Force's obligations and this Court's willingness to enforce the provisions of FOIA. As the D.C. Circuit recently held: "If [in its second attempt] the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera,* requesting further affidavits, or allowing the plaintiff discovery." *Spirko,* 147 F.3d at 997.[2]

---

**2.** For the same reasons that the Court denies the ALDF's Motion for *in camera* Inspection, the Court also denies the Plaintiff's request to take discovery.

### III. CONCLUSION

For the foregoing reasons, the Court denies the Air Force's Motion for Summary Judgment. In doing so, the Court does not eschew the substantial burdens and costs that the Air Force will incur. Nonetheless, FOIA articulates a "general philosophy of full agency disclosure," *Jordan*, 591 F.2d at 755, and therefore

> requires us to demand more detailed information than the [Air Force] has submitted in this case. Faithful implementation of the statute adds significantly to the resource costs an agency— and we might add, reviewing courts— must bear if the agency chooses not to disclose material. The costs must be borne, however, if the congressional policy embodied in FOIA is to be well served.

*Senate of the Commonwealth of P.R.*, 823 F.2d at 587 (Ginsburg, Ruth Bader, J.)

An accompanying Order sets forth a briefing schedule that establishes deadlines for the Air Force to submit a *detailed* affidavit and *Vaughn* index. It also sets dates by which the parties are to file cross-motions for summary judgment. If the Air Force does not file sufficiently detailed materials, the ALDF may renew its motion for *in camera* inspection when it files its cross-motion for summary judgment/opposition to the Air Force's motion for summary judgment.

### ORDER

For the reasons expressed in the accompanying Memorandum Opinion, it is, this 16 day of February 1999, hereby

**ORDERED** that Defendant's Motion for Summary Judgment [# 14–1] shall be, and hereby is, **DENIED**; and it is

**FURTHER ORDERED** that Plaintiff's Motion for *in camera* Inspection [# 22–1] shall be, and hereby is, **DENIED**; and it is

**FURTHER ORDERED** that the parties shall adhere to the following briefing schedule for cross-motions for summary judgment:

| | |
|---|---|
| Defendant's Motion for Summary Judgment, *Vaughn* index, and agency affidavits | April 16, 1999 |
| Plaintiff's Cross–Motion for Summary Judgment/Opposition to Defendant's Motion for Summary Judgment | May 7, 1999 |
| Defendant's Reply/Opposition to Plaintiff's Motion for Summary Judgment | May 21, 1999 |
| Plaintiff's Reply | June 4, 1999; and it is |

**FURTHER ORDERED** that the Defendant shall comply strictly with the requirements set forth in the accompanying Memorandum Opinion; and it is

**FURTHER ORDERED** that, without minimizing any other requirement, the Defendant shall be particularly careful to provide, through its Vaughn index and agency affidavit, "a description of *each document being withheld, and an explanation of the reason for the agency's nondisclosure,*" *Oglesby*, 79 F.3d 1172, 1176 (D.C.Cir.1996) (emphasis added), which shall also "correlate claimed exemptions with particular passages [within each document.]" *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C.Cir.1996); and it is

**FURTHER ORDERED** that, without minimizing any other requirement, the Defendant shall be particularly careful to submit "reasonably specific" statements concerning segregability *for each document withheld.*

**SO ORDERED.**