**DEFENDERS OF WILDLIFE et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE et al., Defendants.**

**No. CIV.A.02–2072 (RMU).**

United States District Court, District of Columbia.

March 30, 2004.

William J. Snape, Defenders of Wildlife, Lydia Kay Griggsby, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Daria J. Zane, United States Attorneys Office, Oscar Summer Mayers, Jr., U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

URBINA, District Judge.

GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case comes before the court on the motions for summary judgment of defendants United State Department of Agriculture ("USDA") and the United States Forest Service("Forest Service") and the motions for summary judgment of plaintiffs Defenders of Wildlife and Endangered Species Coalition's motion for summary judgment. The plaintiffs argue that the defendants impermissibly withheld, and must now release, information that the plaintiffs sought through a FOIA request. The plaintiffs also argue that the defendants do not meet their burden of conducting a reasonable search and justifying non-disclosure of exempted information pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973). In response, the defendants argue they have met their burden under FOIA because their search was adequate and their affidavits sufficiently explain the exempted information. Because the defendants' search of the Office of Natural Resources and Environment and its *Vaughn* indicies were inadequate, the court grants in part the plaintiffs' motion and denies in part the defendants' motion.

### II. BACKGROUND

### A. Factual Background

In 1891 Congress created the National Forest System to regulate specifically designated national forests. Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 3. The Forest Services manages the National Forest System pursuant to the direction of the Under Secretary for Natural Resources and Environment in the USDA Office of Natural Resources and Environment ("NRE"). Am. Compl. ¶ 20. The National Forest Management Act ("NFMA") governs management of the National Forest System and specifically requires the maintenance of biodiversity on national forests. 16 U.S.C. § 1604(g)(3)(B); *Id.* ¶ 15. The NFMA also requires periodic revisions to forest plans which govern a management activities on national forests. *Id.* ¶ 18. In 1997, the Secretary of Agriculture convened a committee to produce a report intended to facilitate NFMA revisions. Pls.' Statement of Undisputed Material Facts ¶ 7. Based on the committee's report, as well as feedback from meetings with tribal, state and local governments, the Forest Service developed a comprehensive revision of the NFMA and promulgated the revision into final form on November 9, 2000. Am. Compl. ¶ 14. On May 17, 2001, the Secretary of Agriculture issued an interim directive extending the deadline for compliance with the November 9, 2000 regulation for one year. *Id.* ¶¶ 25. On September 10, 2002, the NRE, through another interim directive, postponed compliance with the November 9, 2000 NFMA revisions until NFMA regulations are rewritten. *Id.* ¶ 26.

Prior to the last postponement, on May 29, 2002, the plaintiffs submitted a FOIA request to the USDA for two sets of records related to the suspension of the NFMA regulations. *Id.* ¶ 27. Specifically, the plaintiffs requested:

1. All records, other than those published in the Federal Register, related to any communications by, to from and/or within the Department of Agriculture, the Office of Management and Budget, and/or the Council on Environmental Quality, pertaining to development of the Interim Directives ("Interim Directives," 66 Fed.Reg. 27551 (May 17, 2001); 66 Fed.Reg. 27555 (May 17, 2001); 67 Fed.Reg. 35431 (May 20, 2002)) suspending the recently adopted National Forest Management Act regulations ("2000 regulations;" 65 Fed.Reg. 67513 (November 9, 2000)), and pertaining to efforts to suspend, revoke, postpone, and/or revise the 2000 regulations. Please be sure to include communications to and from other agencies and their staff, communications to an from outside parties such as companies, associations, individuals, and environmental organizations, and internal communications. Please also include comments received on the Interim Directives, and the "comments from individuals, groups and organizations expressing concerns regarding its implementation" mentioned at 67 Fed.Reg. 35432.

2. A record of people outside of federal agencies who were consulted or involved in formulating the Interim Directives, or reviewing suggestions, recommendations, and/or proposals to suspend, postpone, or revise the 2000 regulations.

Pls.' Mot. Ex. 4 at 2. The plaintiffs' FOIA request defined "records" as "all written, transcribed, recorded or graphic matters, however produced or reproduced." *Id.* Further, the plaintiffs indicated that the term "Department of Agriculture" encompasses the agency as well as "departments, branches, divisions, subdivisions, or subsidiaries, together with all of their employees, officials, officers, agents, contractors, subcontractors, appointees, consultants, or any other persons or entities acting on their behalf or performing services for them." *Id.*

The FOIA processor for the USDA received the plaintiffs' FOIA request on June 11, 2002. Fowler Decl. ¶¶ 1,6. That same day, the FOIA processor forwarded the request to the Forest Service and sent an acknowledgment letter to the plaintiffs. *Id.* ¶ 7. Based on her experience and judgment, the FOIA processor decided not to forward the FOIA request to any other offices within the USDA. *Id.* ¶ 10. On October 28, 2002, however, on the recommendation of the Forest Service FOIA staff, the FOIA processor forwarded the FOIA request to the NRE and the USDA Office of General Counsel ("OGC"). *Id.* ¶ 9.

### 1. The Forest Service Documents

The FOIA officer for the Forest Service received the plaintiffs' FOIA request on June 11, 2002. Morgan Decl. ¶¶ 1, 5. The Forest Service's search in response to the plaintiffs' FOIA request yielded 848 pages of responsive documents. *Id.* ¶ 8. Of those documents, the Forest Service withheld 636 pages in full, withheld 46 pages in part and released 166 pages in full. *Id.*

Of the records withheld in full, the Forest Service indicated that the records fell into four general groupings. The first group consisted of "about 520 pages" of drafts of rules. *Id.* ¶ 9. The second group comprised 32 pages of drafts for the regulatory workplans for the rules. *Id.* ¶ 10. The third group consisted of 9 pages of draft informational memoranda for the Secretary of Agriculture. *Id.* ¶ 11. The fourth group included "about 75 pages" of miscellaneous records, including drafts of talking points, question and answer items, a draft of the "Larson Report," drafts of the plan for promulgating the interim final rule, and varied drafts of issues and positions related to the rules. *Id.* ¶ 12.

Of the records withheld in part, the Forest Service indicated that the records fell into four categories. Group one consisted of 29 pages of emails that the Forest Service redacted to "protect the discussions, questions, issues, strategies, and explanations regarding the content of the rules and the procedures for processing the rules." *Id.* ¶ 14. Group two consisted of seven pages of a planning outline that the Forest Service redacted "to protect the views of the author about particular consideration related to the rules." *Id.* Group three included seven pages of miscellaneous records containing "discussions, opinions, positions and other deliberations between agency employees or between agency employees and agency counsel on the content and language of the rules and on strategies to cope with issues within the rules." *Id.* Group four comprised three pages of e-mails that the Forest Service redacted to protect personal information. *Id.*

## 2. The NRE Documents

The Executive Assistant to the Under Secretary of Agriculture for Natural Resources and Environment received the plaintiffs' FOIA request on October 28, 2002. Alston Decl. ¶ 1. The NRE explains that the number of records within it was very limited because it returns records relating to program matters, such as the plaintiffs' requested rulemaking records, to the originating agency. *Id.* ¶ 5. It further states that upon receipt of the plaintiffs' FOIA request, the office searched subject-matter files that were arranged by topic and the staff action database, which contained tracking information on letters received by USDA and the responses to those letters. *Id.* ¶ 6. The NRE's search of the files entailed both a manual search of the subject-matter files and an electronic search of the staff-action database. *Id.* ¶¶ 7, 10. The NRE reported that its search did not locate any documents responsive to the plaintiffs' FOIA request.

*Id.* ¶ 12. In a supplemental declaration, the NRE declares that the Deputy Under Secretary of the NRE reviewed the plaintiffs' FOIA request and that the Under Secretary stated that he had no responsive documents. Alston Supplemental Decl. ¶ 5.

## 3. The OGC Documents

The Associate General Counsel for Natural Resources declares that the Assistant General Counsel of the Natural Resources Division ("NRD") received the plaintiffs' FOIA request on October 30, 2002. Poling Decl. ¶ 1, 4. The OGC located seven documents responsive to the plaintiffs' request. *Id.* ¶ 6. Specifically, four of those documents were e-mails that the OGC withheld to "protect the candor necessary to the utility of interchanges, discussions, questions, strategies and explanations concerning the planning rule and the process for promulgation." *Id.* ¶ 7. The OGC withheld the remaining three documents because they were preliminary works in progress and included legal marginalia. *Id.* ¶ 8.

## B. Procedural History

Plaintiff Defenders of Wildlife filed its complaint on October 23, 2002, seeking declaratory and injunctive relief due to the defendants' alleged failure to respond to the FOIA request. On October 31, 2002 the Forest Service responded to the plaintiff's FOIA request, and on November 1, 2002, the OGC and NRE served their responses to the plaintiff. On January 9, 2003, the plaintiff amended its complaint to add the Endangered Species Coalition as a plaintiff and to address the defendants' FOIA responses. The amended complaint alleged that the defendants' responses were wholly inadequate and did not fulfill the defendants' FOIA obligations. The defendants answered on January 30, 2003, and on March 13, 2003, both sides submitted motions for summary judgment. The court now turns to those motions.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in a FOIA Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

 FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen,* 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al–Fayed v. CIA,* 254 F.3d 300, 305 (D.C.Cir.2001); *Summers v. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C.Cir.1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers,* 140 F.3d at 1080; *Vaughn,* 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index").

 The court may grant summary judgment to an agency on the basis of its affidavits if they:

> [ (a)] describe the documents and the justifications for nondisclosure with reasonably specific detail, [ (b)] demonstrate that the information withheld logically falls within the claimed exemption, and [ (c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (citing *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

### B. The Court Concludes That the Defendants' Search of the NRE Was Inadequate

As an initial matter, the plaintiffs do not contest the adequacy of the defendants' search of the Forest Service or the OGC. *See generally* Pls.' Mot. The plaintiffs do,

however, contest the adequacy of the defendants' search of the NRE. *Id.* at 12–18. In their reply, the plaintiffs clarify their argument that the defendants also should have searched the office of the Secretary of Agriculture and "other offices that probably had a hand in these rulemakings, such as the offices of Congressional Relations or the Chief Information Officer." Pls.' Reply at 9.

### 1. Legal Standard for An Adequate Search

 "A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia–Lucena v. United States Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999). To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C.Cir.1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia–Lucena,* 180 F.3d at 326 (citing *Oglesby,* 920 F.2d at 68). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby,* 920 F.2d at 67 n. 13 (citing *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986)); *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.D.C.1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1201 (D.C.Cir.1991); *Meeropol,* 790 F.2d at 952, 956. Nor need the agency produce a document where "the agency is no longer in possession of the document[ ] for a reason that is not itself suspect." *SafeCard Servs.,* 926 F.2d at 1201.

 Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine,* 71 F.3d at 890 (citing *Oglesby,* 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.,* 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia–Lucena,* 180 F.3d at 326 (internal quotations and citations omitted).

### 2. The Defendants' Search of the NRE Was Inadequate

 In their motion for summary judgment, the plaintiffs allege that the defendants' declarations do not indicate an adequate search of the NRE. Pls.' Mot. at 12. In particular, the plaintiffs assert that

> It [is] impossible that the office with direct oversight of the Forest Service and the NFMA regulations, the office that intimately reviewed the 2000 regulations, promulgated rules effectively withdrawing them, and ordered and is overseeing their wholesale revision, does not have *any* records related to the rules suspending those regulations, or to agency actions revising them.

*Id.* (emphasis in the original). The plaintiffs also assert that documents produced by the Forest Service reference the NRE's involvement, thus evidencing the existence of documents that the search of the NRE

should have turned up. *Id.* at 13. Further, the plaintiffs point out that the NRE's declarations merely state that the Deputy Under Secretary of the NRE was aware of the FOIA request and that he told the Executive Assistant to the Under Secretary that he did not have any responsive documents. Pls.' Reply at 9. According to the plaintiffs, the Deputy Under Secretary's statement does not give any indication about the reasonableness of his search. *Id.* Finally, the defendants suggest that the failure of the NRE to locate any responsive documents indicates that the plaintiffs acted in bad faith. Pls.' Mot. at 21.

The defendants respond by asserting that they have made a good-faith effort to conduct a search that was reasonably calculated to produce the requested information. Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 30; Defs.' Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp'n") at 8. The defendants state that the plaintiffs have not demonstrated that NRE retains any records from rulemaking, even if it is significantly involved in that rulemaking. Defs.' Mot. at 32; Defs.' Opp'n. at 9. Moreover, the defendants claims that the NRE's search was adequate because the NRE conducted manual and electronic searches on its only two file systems for responsive documents under the topics of rules, regulations and planning using language and key words from the plaintiffs' FOIA request. Defs.' Mot. at 32; Defs.' Opp'n at 10. Finally, the defendants characterize the plaintiffs' allegations of bad faith as meritless because they are vague and conclusory. Defs.' Opp'n at 10.

The court concludes that the defendants' search of the NRE was not reasonably calculated to uncover all relevant documents. While the Executive Assistant's manual and electronic search of the NRE was reasonable, it appears from the record that the Deputy Under Secretary maintains separate records. Alston Supp. Decl.

¶ 5. With regard to the defendants' search of the Under Secretary of the NRE's office, the bare assertion that the Deputy Under Secretary saw the FOIA request and that he stated that he had no responsive documents is inadequate because it does not indicate that he performed any search at all. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551–552 (D.C.Cir. 1994); *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C.Cir.1980) (holding that "agency affidavits that do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedure utilized are insufficient") (internal quotation omitted). By not providing any details about his search, the Deputy Under Secretary's conclusory denial that he did not possess any responsive documents does not "demonstrate beyond material doubt that [the NRE's] search was reasonably calculated to uncover all relevant documents." *Nation Magazine*, 71 F.3d at 890. Accordingly, the court orders a new search of the Office of the Deputy Under Secretary.

### 3. The Defendants' Decision Not to Search Other USDA Offices Was Reasonable

The plaintiffs also assert that the defendants should have searched the Secretary of Agriculture's Office and "other offices that probably had a hand in these rulemakings, such as the offices of Congressional Relations or the Chief Information Officer." Pls.' Reply at 9. In response, the defendants state that the USDA FOIA officer's declaration indicates that restricting the search to the Forest Service, NRE and OGC was reasonable. Defs.' Reply at 2–3.

In her declaration, the USDA FOIA processor sets forth her experience and qualifications for responding to FOIA re-

quests, and that her experience led her to direct the plaintiffs' FOIA request to the Forest Service, NRE and OGC. Fowler Decl. ¶¶ 1, 7. The USDA FOIA processor explains that she directed the plaintiffs' request to the Forest Service because the request sought records about interim directives relating to the NFMA, which was a Forest Service program area, and that "it is an almost universally consistent generality that records concerning a particular USDA program are maintained by the component that carries out that program." *Id.* ¶ 7.

 As noted, FOIA does not mandate a "perfect" search. *SafeCard Servs.*, 926 F.2d at 1201. Rather, the search need only be reasonable. *Oglesby*, 920 F.2d at 67 n. 13. Moreover, there is no requirement that an agency search every division within it when the agency believes that responsive documents are located in one place. *Id.* at 68. While the defendants subsequently found responsive documents in the OGC only after a Forest Service employee's recommendation that the OGC be searched as well, it is settled law in this circuit that the subsequent disclosure of documents initially withheld does not qualify as evidence of bad faith. *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C.Cir.2002). The plaintiffs have not provided any positive indications of overlooked materials or other indications of bad faith. *See generally* Pls.' Mot.; Pls.' Opp'n to Defs.' Mot. for Summ. J.; Pls.' Reply. Rather, the plaintiffs' allegations that the defendants erred by not searching the offices of the Secretary of Agriculture, Congressional Relations or the Chief Information officer are "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200. Accordingly, the court concludes that the defendants' decision not to search USDA offices other than the Forest Service, NRE and OGC was reasonable. *Oglesby*, 920 F.2d at 68

## C. The Court Concludes That the *Vaughn* Indices Are Inadequate

### 1. Legal Standard for the Adequacy of a *Vaughn* Index

 In FOIA cases, the requester is often unable to argue for the release of redacted or withheld documents with "desirable legal precision" because "the party seeking disclosure cannot know the precise contents of the documents sought." *Vaughn*, 484 F.2d at 823. To prevent courts from having to review hundreds or thousands of documents *in camera*, the D.C. Circuit set forth special procedures— the filing of a *Vaughn* index—to assist both courts and requesters in reviewing the validity of an agency's decision to withhold documents. *Id.* 484 F.2d at 826–28. A *Vaughn* index is an affidavit that indexes and specifically describes withheld or redacted documents and explains why each withheld record is exempt from disclosure. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C.Cir.1987). The index must "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to ·review, the soundness of the withholding." *Id.* at 218.

 Toward that end, the requester and the trial judge must "be able to derive from the [*Vaughn*] index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Judicial Watch, Inc. v. Export–Import Bank*, 108 F.Supp.2d 19, 34 (D.D.C.2000) (quoting *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994)). While there is no set form for a *Vaughn* index, the agency should describe the documents with "as much information as possible without thwarting the exemption's purpose." *King*, 830 F.2d at 224. Moreover, a *Vaughn* index must provide "a relatively detailed justification, specifically identifying the reasons why a particular

exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977). The D.C. Circuit notes three important elements for an adequate *Vaughn* index: (1) the index should be one document, (2) the index must adequately describe the withheld documents or deletions, (3) the index must state the particular FOIA exemption, and explain why the exemption applies. *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C.Cir.1979). Finally, the index also should note if the agency has segregated any discloseable information from each withheld document. *Vaughn,* 484 F.2d at 827.

## 2. Legal Standard for Exemption 5 Deliberative Process Privilege

■■■ Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1184 (D.C.Cir.1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin,* 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 800, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege. *Sears,* 421 U.S. at 149, 95 S.Ct. 1504. At issue in this case are the deliberative-process and the attorney work-product privileges invoked by the defendants.

■■■ The general purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears,* 421 U.S. at 151, 95 S.Ct. 1504. The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action. *Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. Dep't of Justice,* 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc). In essence, the privilege protects the "decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears,* 421 U.S. at 150, 95 S.Ct. 1504 (internal quotations omitted). Thus, the deliberative-process privilege ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992).

■■■ To invoke the deliberate-process privilege, the defendants must establish two prerequisites. *Id.* First, the communication must be "predecisional;" in other words, it must be "antecedent to the adoption of an agency policy." *Jordan,* 591 F.2d at 774; *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C.Cir.1991). In determining whether a document is predecisional, an agency does

not necessarily have to point specifically to an agency's final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868. In other words, as long as a document is generated as part of such a continuing process of agency decision-making, the deliberative-process protections of Exemption 5 may be applicable. *Id.; Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C.Cir.2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

◼◼◼◼ Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 484 F.2d at 823–24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C.Cir.1987)).

### 3. The Defendants' *Vaughn* Indices Are Inadequate

The plaintiffs' main argument is that the substance of the defendants' declarations do not provide them a meaningful opportunity to contest the defendants' withholding of responsive records. First, the plaintiffs argue that the declarations do not provide enough specific information to identify the role of each document in a deliberative process. Pls.' Mot. at 19. Second, the plaintiffs argue that the defendants' "conclusory and generalized allegations of FOIA exemptions" do not provide enough specificity to meet the standards that

*Vaughn* and its progeny established. *Id.* at 20.

The defendants disagree. First, the defendants argue that declarations are an accepted form of a *Vaughn* index because the court is concerned with the substance, not the form of the explanation regarding withheld documents. Defs.' Opp'n at 3–4. Second, the defendants argue that a categorical approach to exemption is appropriate. *Id.* Under the categorical approach, the agency aggregates groups of documents under a general description, and asserts a specific exemption for all of them. *See generally* Defs.' Opp'n. Essentially, the defendants assert that the declarations they produced in response to the plaintiffs' FOIA request are detailed enough to justify their withholding. *Id.* at 7.

◼◼◼◼ The court agrees with the defendants that declarations may generally serve as an acceptable form of a *Vaughn* index. *Raulerson v. Ashcroft*, 271 F.Supp.2d 17, 21 (D.D.C.2002). The defendants correctly assert that substance is paramount. *King*, 830 F.2d at 224. The court disagrees, however, with the defendants' assertion that their categorical exemption in this case is appropriate, and that their declarations contain adequate substance to determine whether they properly withheld records.

◼◼◼◼ The defendants describe the vast majority of the documents withheld in full or in part as "drafts." *See generally* Morgan Decl.; Poling Decl. Although an agency may properly withhold drafts pursuant to Exemption 5, the defendants' designation of a document as a "draft" does not automatically trigger proper withholding under Exemption 5. *Arthur Andersen & Co. v. Internal Revenue Serv.*, 679 F.2d 254, 257 (D.C.Cir.1982). As noted, the agency must demonstrate that a withheld document is predecisional and deliberative.

But the document can lose its predecisional status "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States,* 617 F.2d at 866. "The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.' " *Animal Legal Defense Fund, Inc. v. Dep't of the Air Force,* 44 F.Supp.2d 295, 299 (D.D.C.1999) (quoting *Coastal States,* 617 F.2d at 867). Further, in evaluating whether a document qualifies under Exemption 5, "[t]he identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Id.* at 868.

▮ After perusing the defendants' declarations, the defendants do not persuade the court that all of the withheld documents contain predecisional and deliberative information. The defendants' principal overarching problem is that they do not provide an individualized description of any of the documents, despite the D.C. Circuit's emphasis on the individualized nature of the deliberative-process inquiry. *Id.; Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d 252, 259–60 (D.D.C.2004) (holding that "[s]ince the applicability of the deliberative process privilege depends on the content of each document and the role it plays in the decisionmaking process, an agency's affidavit must correlate facts in or about each withheld document with the elements of the privilege"). For instance, in describing its 636 withheld pages, the Forest Service states:

The records withheld in full fall into four general groupings. The first group contains about 520 pages. These pages are drafts of the rules. The drafts were written by Forest Service employees and contains positions and descriptions that have not been adopted by the Forest Service. Some positions may have changed; some may have remained the same. The necessary internal review of a rule was not under taken [*sic*] for these drafts. Rather, employees involved in creating the rules made suggestions and comments and posed questions about the drafts. The drafts were revised and reviewed again and again. The responsive pages are various drafts of the rules; they are not the versions of the rules published in the Federal Register.

Morgan Decl. ¶ 9. The court readily identifies several problems with this vague declaration. First, the defendants state that the documents contain some positions that may have changed and some that may have remained the same. *Id.* By admitting that some of the positions remained the same, the Forest Service may have formally or informally adopted the contents of some of the documents. Any such adoption would destroy the predecisional aspect of the drafts. *Coastal States,* 617 F.2d at 866. Without being provided any detail about the substance of the drafts, however, the court cannot determine if the defendants have formally or informally adopted any of the positions taken in the draft. In addition, the Forest Service does not specify by name, title and position, the exact authors or recipients of the documents. *See generally* Alston Decl.; Morgan Decl.; Poling Decl. As a result, the court cannot determine whether the documents contain communications from subordinates to superiors, or vice versa. *Coastal States,* 617 F.2d at 868; *Animal Legal Def. Fund,* 44 F.Supp.2d at 300 (ob-

serving that "[n]otably absent form any of the affidavits or *Vaughn* index are two factors that can assist the court in determining whether this [deliberative process] privilege is available; the nature of decisionmaking authority vested in the officer or person issuing the disputed document and the relative position in the agency's chain of command occupied by the documents' author and recipient") (internal quotations omitted). Accordingly, the court cannot determine if the documents are actually predecisional and deliberative. *Coastal States,* 617 F.2d at 868. Thus, the court concludes that the Forest Service has not provided an adequate *Vaughn* index. *King,* 830 F.2d at 218.

The rest of the defendants' withheld documents suffer from the same fatal flaw. For instance, for the second, third and fourth groups of withheld documents, the Forest Service again relies on the assertion that the documents are drafts in invoking Exemption 5. Morgan Decl. ¶¶ 10–12 (describing the second group of withheld documents as "drafts of regulatory workplans," the third group as "draft informational memoranda," and the fourth group as "drafts of miscellaneous records"). Similarly, the 46 pages that the Forest Service withheld in part fail to identify any authors, intended recipients or the subject matter of the document, except in the broadest and vaguest terms. *Id.* ¶ 14 (asserting that the Forest Service partially redacted documents to "protect the discussion, questions, issues, strategies and explanations regarding the content of the rules," and that the authors of the documents were "agency employees"). The OGC documents also do not identify the specific authors or the subject matter of the documents, except to say that the documents are "drafts" and "were written by employees of USDA." Polling Decl. ¶¶ 6, 8–9. Again, the bare-bones and conclusory descriptions of the Forest Service's partially withheld documents and the OGC

documents do not allow the court to discern whether the documents are both predecisional and deliberative. *Coastal States,* 617 F.2d at 868.

In sum, the defendants' declarations do not afford the plaintiffs "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King,* 830 F.2d at 218. Thus, the plaintiffs cannot argue effectively for disclosure and this court cannot rule effectively. *Id.* at 225. Rather than rule on the basis of inadequate *Vaughn* indices, the court directs the defendants to submit new *Vaughn* indices with proper detailed document descriptions and reasons for withholding that illuminate the contents of the documents and the reasons for non-disclosure. Any lesser standard of compliance would not satisfy this circuit's requirements and FOIA's policy "in favor of the fullest possible disclosure of document records." *Founding Church of Scientology,* 603 F.2d at 949.

### D. The Court Will Not Order a Disciplinary Investigation

 As a final matter, the plaintiffs allege that the defendants' withholding of documents was improper and warrants both a finding that the defendants acted arbitrarily and capriciously and a disciplinary investigation. Pls.' Mot. at 21 (citing 5 U.S.C. § 552(a)(4)(F)). According to the plaintiffs, the NRE has exhibited a total lack of compliance, and that it is "impossible" that the NRE does not have responsive records. *Id.*

The Merit Systems Protection Board will initiate an investigation into the improper withholding of non-exempt records under FOIA if the court (1) orders the production of the withheld records and (2) issues written findings that the "circumstances surrounding the withholding raise questions whether agency personnel acted

arbitrarily or capriciously[.]" *Perry v. Block*, 684 F.2d 121, 125 n. 19 (D.C.Cir. 1982) (quoting 5 U.S.C. § 552(a)(4)(F)). In the instant case, the court has not ordered production of any withheld records. While the court agrees that a portion of the NRE search was inadequate, the court has not determined that the defendants are withholding non-exempt records. The fact alone that the plaintiffs themselves believe that the defendants are purposely withholding non-exempt records does not adequately provide the court with any basis for initiating a disciplinary investigation. *Id.* Accordingly, the court declines to issue a finding that the defendants acted arbitrarily and capriciously and to order an investigation.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiffs' motion for summary judgment and grants in part and denies in part the defendants' motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of March, 2004.