VOTEHEMP, INC., Plaintiff,

v.

DRUG ENFORCEMENT
ADMINISTRATION,
et al., Defendants.

Civil Action No. 02–985(RBW).

United States District Court,
District of Columbia.

Oct. 15, 2004.

4

Joseph E. Sandler, Sandler, Reiff & Young, P.C., Washington, DC, for Plaintiff.

Elizabeth J. Shapiro, Ronald James Wiltsie, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION

REGGIE B. WALTON, District Judge.

Currently before this Court is Defendants' Motion for Summary Judgment [D.E. # 34], and Plaintiff's Cross Motion for Summary Judgment [D.E. # 35]. This case arises from a Freedom of Information Act, 5 U.S.C. § 552 (2000) ("FOIA"), request by the plaintiff for the production of certain documents pertaining to the Drug Enforcement Administration's ("DEA") policies and regulations governing the production and use of hemp in the United States. Based on the arguments and submissions presented to the Court, the defendants' motion will be granted in part and denied in part and the plaintiff's motion will also be granted in part and denied in part.

### I. FACTUAL BACKGROUND

On September 21, 2001, the plaintiff, VoteHemp, Inc. ("plaintiff" or "VoteHemp"), filed a request with the Freedom of Information Operations Unit of the DEA for certain records relating to hemp policy. Complaint for Declaratory and Injunctive

Relief ("Compl.") ¶ 8.[1] On January 8, 2002, the DEA denied the request based on the FOIA exemption set forth in 5 U.S.C. § 552(b)(5), stating that only five documents were being withheld and that there were no other documents to be released. *Id.* ¶ 10. On January 28, 2002, the plaintiff filed an administrative appeal with the Office of Information and Privacy ("OIP") requesting that the appeal be decided within twenty working days as required by 5 U.S.C. § 552(a)(6)(A)(i).[2] *Id.* ¶¶ 11, 16; Defendants' Statement of Undisputed Facts Supporting Their Motion for Summary Judgment ("Defs.' Stmt.") ¶ 4. By letter dated March 13, 2002, the OIP acknowledged the plaintiff's administrative appeal. Defs.' Stmt. ¶ 5. Subsequently, on May 15, 2002, the DEA determined that of the four categories of information requested by the plaintiff, the DEA had only responded to one of the categories and therefore reopened the plaintiff's request. Defendants' Memorandum Supporting Defendants' Motion for Summary Judgment ("Defs.' Mem.") at 4 (citing Exhibit ("Ex.") 1F (Letter from OIP to counsel for the plaintiffs)). Accordingly, on May 21, 2002, the DEA supplemented its response, stating that it could not respond to the remaining three categories because the request did not correspond with its record keeping system. *Id.* (citing Ex. 1G (Letter from the United States Department of Justice ("DOJ") DEA Freedom of Information Section to counsel for plaintiff dated May 21, 2002)). On that same day, and prior to its appeal being resolved, the plaintiff filed its complaint initiating this action. *Id.* Also, on that same day, the DEA, by letter, advised the plaintiff that the "DEA offices do not maintain 'hemp policy' files per se." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Summary Judgment ("Pl.'s Mem.") at 8. Later, in August 2002, the plaintiff requested an estimate of the approximate volume of documents that related to the DEA's promulgation of its Interpretive, Proposed, and Interim Rules related to hemp seed and oil. Defs.' Mem., Ex. 1I (Letter from plaintiff's counsel to the DOJ dated August 30, 2002). After contacting several offices that "cold maintained" responsive records, it was estimated that the number of records requested by the plaintiff would exceed 32,000 pages. Defs.' Mem. at 5, Ex. 1K (Letter to the plaintiff's counsel from the DOJ dated October 1, 2002). The DEA subsequently denied the plaintiff's request for a fee waiver for copies of these documents and this Court granted partial summary judgment for the defendants with respect to the fee waiver. Defs.' Mem. at 5. After this Court upheld the DEA's denial for a fee waiver, VoteHemp reformulated its request several times, finally settling by April 1, 2003, on the following request for documents:

1. The four categories of information sought by the plaintiff are: (1) all written correspondence relating to hemp policy; (2) all writing correspondence, including meeting notes, from the DEA interagency meetings relating to hemp policy; (3) all written correspondence from the United States Customs Service ("USCS") to the DEA or from any employee of the DEA to an employee of the USCS relating to hemp import policy; and (4) all written correspondence the DEA Diversion Control Program sent to and received from any employee of any federal agency or person of any entity relating to hemp policy. Def.s' Mem. at 4.

2. 5 U.S.C. § 552(a)(6)(A)(i) provides that the agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receipt of ... [a] request whether to comply with such request" and requires the agency to "immediately notify the person making such request of such determination and the reasons therefor."

All documents, including but not limited to written correspondence, memos, notes of meetings, relating or referring to the U.S. Government's regulation of, or ability or desire to regulate or control, under the Controlled Substances Act, the importation, distribution, possession, manufacture, sale or use of hemp stalk, seed or oil, or hemp seed or oil products of any kind.

*Id.*, Ex. 1O (Letter from plaintiff's counsel to the DOJ clarifying VoteHemp's updated request dated March 29, 2003). The parties also agreed that the DEA would limit its search for responsive documents to three offices: (1) the Office of Diversion Control, (2) the Liaison and Policy Sections, and (3) the Office of the Administrator. *Id.*, Ex. 1P (Letter to plaintiff's counsel from the DOJ dated April 1, 2003, confirming receipt of the final reformulation of VoteHemp's FOIA request and acknowledging receipt of VoteHemp's check to pay the costs of producing the requested documents). The April 1, 2003 letter also stated that the "DEA considers [the] reformulated request as superceding VoteHemp's initial FOIA request of September 21, 2001, and all prior reformations of that request." *Id.* The search that occurred thereafter revealed 331 documents that have been either produced in their entirety, redacted and released, or withheld in their entirety. Pl.'s Mem. at 9.

## II. ANALYSIS

### A. Standard of Review for Summary Judgment

In reviewing the parties' motions for summary judgment, the Court must determine that there exists "no genuine issue as to any material fact and ... [that] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must review the facts in the light most favorable to the non-moving party in making this determination. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its determination, the Court evaluates the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...," that are presented to the Court. Fed.R.Civ.P. 56(c). Once a motion for summary judgment has been properly made and supported by evidence, the non-moving party must then demonstrate the existence of a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed. R.Civ.P. 56(e)). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law...." *Id.* at 248, 106 S.Ct. 2505. Summary judgment is mandated if a party fails to establish an element essential to that party's case on which that party will have the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. "Likewise, when ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Barr Labs. v. Thompson,* 238 F.Supp.2d 236, 244 (D.D.C. 2002).

In a FOIA case, to satisfy the summary judgment standard, "the 'defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspec-

tion requirements.'" *Perry v. Block*, 684 F.2d 121, 126 (D.C.Cir.1982) (citation omitted). When reviewing an agency's treatment of a plaintiff's FOIA request, "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA's] exemptions.... [T]he burden is on the agency to sustain its action." 5 U.S.C. 552(a)(4)(B); *see also Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C.Cir.1979).

## B. Adequacy of the Search

The DEA contends that it responded to VoteHemp's request which sought the release of "all documents on [the] DEA's hemp policy." Defs.' Mem. at 6–7. The DEA conducted a broad-based search of the three offices specified in the plaintiff's reformulated FOIA request and obtained and copied all documents that contained information about hemp. *Id.* at 7, Ex. 1 (citing the Declaration of William C. Little, Jr. dated October 9, 2003) ("Little Decl.") ¶ 36.[3] The DEA states that "all documents that generally concerned hemp, including cover sheets and routing slips that did not mention hemp themselves but merely circulated other substantive documents that did, were deemed responsive and included in either the production or the Vaughn Index."[4] Defs.' Mem. at 7. Thus, the DEA concludes that "by applying this broad definition of responsive document [sic] to each of the three offices to be searched, DEA ensured that its search was reasonably calculated to uncover all responsive documents." *Id.* Thus, the DEA concludes that its search for responsive records satisfied the requirement of the FOIA, *id.* at 6, because it has "demonstrat[ed] that it has conducted a search reasonably calculated to uncover all relevant documents." *Id.* (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984)). *Id.*

On the other hand, the plaintiff contends that the DEA's claim that it had no specific files relating to hemp policy led VoteHemp to "eventually agree to a search of a very limited group of files identified, not by subject matter, but only by office location." Pl.'s Mem. at 7. The plaintiff contends that contrary to the DEA's initial representation, it appears that the DEA does maintain specific files relating to hemp. *Id.* at 9. The plaintiff references several documents produced by the DEA that references hemp. *Id.* For example, documents Bates stamped 8 and 153 refer to an "ODL file 630–01–H1 (Hemp)," and "File 630–01 H1 HEMP." *Id.* Additionally, a document Bates stamped 764 refers to file "630–01–H1 (Drugs & Chemicals—Hemp)." *Id.* The plaintiff further maintains that the DEA has explained "virtually nothing about its record-keeping system," specifically referring to paragraphs 36 and 42 of the Little Declaration. *Id.* at 11. The plaintiff also contends that the entire record "is devoid of any explanation concerning whether DEA maintains specific files relating to hemp as suggested by the file references in the documents...." *Id.*

In response, the DEA reiterates that it does not maintain files or records under a

---

**3.** William C. Little, Jr. is an attorney assigned to the Office of Chief Counsel, Administrative Law Section of the DOJ. Mr. Little is responsible for matters involving the FOIA and the Privacy Act requests in which the DEA is an interested party. Defs.' Mem. Ex. 1 (Declaration of William C. Little, Jr. taken on October 9, 2003) ¶¶ 2, 3.

**4.** *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973).

system that is readily searchable for "hemp" related documents. Defendants' Reply Memorandum Supporting their Motion for Summary Judgment and Opposing VoteHemp's Cross–Motion for Summary Judgment ("Defs.' Reply") at 1. Therefore, the DEA asserts that it did not deceive VoteHemp into agreeing to a limited search for documents responsive to VoteHemp's FOIA request. *Id.* The DEA represents that the FFS[5] documents that are numbered 630–01 and referenced by the plaintiff, are part of the 630 category, which contains "files pertaining to marijuana, cocaine, crack, heroine and many othe[r]" drugs. *Id.* at 3. And "[b]ecause the active ingredient in hemp, THC, is a controlled substance that fits within this category, it may be that some offices maintain files concerning hemp under this number" *Id.* The DEA explains that the words "hemp" or "hemp h1," which were on the documents following the FFS number, are not official DEA designations. *Id.* at 3–4. Rather, these designations are discretionary identifiers that were "added by some individual or office." *Id.* at 4. Thus, the DEA asserts it does not maintain a "hemp" file. *Id.* Moreover, the DEA represents that any search for all documents related to hemp, such as requested by VoteHemp, would have required a worldwide search of multiple FFS categories that could have been conducted only at significant financial costs. *Id.* Furthermore, the DEA reasons that because there are no "hemp" files, the only way to avoid those costs was to agree to limit the search to certain offices, as was done here. *Id.* The DEA maintains that "[t]he agreement between VoteHemp and DEA that resulted in the narrowed search was the product of good faith disclosure by DEA." *Id.* at 5 Moreover, the DEA agrees that it did not

describe its record keeping system in any detail because the search was restricted to three offices by agreement of the parties. *Id.* at 5–6.

██ "An agency moving for summary judgment in a FOIA case 'must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Gallace v. U.S. Dep't of Agric.,* 273 F.Supp.2d 53, 57 (D.D.C.2003) (quoting *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). "The adequacy of the search is judged by a reasonableness standard." *Id.* (citing *McGehee v. CIA,* 697 F.2d 1095, 1100–01 (D.C.Cir.1983)) As the District of Columbia Circuit has made clear, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Weisberg,* 705 F.2d at 1351 (quoting *Perry v. Block,* 684 F.2d 121, 128 (D.C.Cir.1982) (per curiam)). "To demonstrate the adequacy of its search, an agency must provide the court with 'affidavits of responsible agency officials which are relatively detailed, nonconclusory, and submitted in good faith.'" *Gallace,* 273 F.Supp.2d at 57 (quoting *Greenberg v. United States Dep't of Treasury,* 10 F.Supp.2d 3, 12–13 (D.D.C.1998)). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the *specific request.*" *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986)) (emphasis added).

██ Here, the parties agreed to a limited search of three specific DEA offices. The plaintiffs confirmed by letter the agreed upon scope of the search. Defs.' Mem. at 5, Ex. 1O. With the request

---

**5.** FFS refers to Functional Filing System. The DEA maintains its records under the FFS. Defs.' Reply at 2.

as agreed to by the parties, the DEA conducted a search consistent with the agreement between VoteHemp and DEA. This agreement resulted in the narrowed search and nothing in the record contradicts the DEA's representation that the limitation of the search was the product of anything other than good faith representations that were made on the part of the DEA. *See* Defs.' Mem. at 5 "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994). Based on the record before the Court in this case, the plaintiff's argument that the DEA's search was not adequate does not comport with the reality of what actually occurred. Therefore, this Court concludes that the DEA's search for the requested documents was adequate.

## C. The FOIA Exemptions

### 1. Exemption 6

 Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6) (1994). The phrase "similar files" has been "broadly defined to include any Government records on an individual which can be identified as applying to that individual." *Judicial Watch of Fla. v. U.S. Dep't of Justice*, 102 F.Supp.2d 6, 16 (D.D.C. 2000) (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601–02, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982)). As construed by the District of Columbia Circuit, "Exemption 6 permits the withholding of information only when two requirements have been met: first, the information must be contained in personnel, medical, or 'similar' files, and second, the information

must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." *Wash. Post*, 456 U.S. at 598, 102 S.Ct. 1957. This "exemption [was] intended to cover detailed [g]overnment records on an individual which can be identified as applying to that individual." *Id.* at 602, 102 S.Ct. 1957 (citation omitted). However, Exemption 6 should only be employed when the privacy interest at stake outweighs the public interest in disclosure. Therefore, a district court must "balance the 'individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny, . . . .'" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). In performing this analysis, courts in this circuit are to "tilt the balance (of disclosure interests against privacy interests) in favor of disclosure." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (1982) (citation omitted). The court must also take into account that "[t]he weight of the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law." *Judicial Watch*, 102 F.Supp.2d at 17 (citing *Reed v. NLRB*, 927 F.2d 1249, 1252 (D.C.Cir. 1991)).

In support of their argument for disclosure, the plaintiff claims that the DEA has improperly invoked Exemption 6 to withhold names and addresses of government officials and private individuals from documents not otherwise exempt. Pl.'s Mem. at 13. The government officials whose names were redacted are individuals who authored certain documents or to whom certain documents were addressed or copied. *Id.* The DEA also redacted the

names and, in many cases, addresses of private individuals or organizations who submitted requests for information, suggestions, and requests for action or comments to the DEA with respect to hemp policy or regulations.[6] *Id.* The plaintiff contends that the mere identification of a government official who wrote or received official correspondence or memoranda is not a "detailed government record." *Id.* The plaintiff further contends that none of the documents in which the names of government officials have been redacted are about those government officials, or contain any information about those officials, personal or otherwise, other than the mere fact that the official wrote or received an official memorandum or letter, the substance of which the DEA has conceded is not exempt from disclosure. *Id.* at 15. Thus, the plaintiff concludes there is no invasion of privacy occasioned by the identification of government officials who send or receive correspondence including e-mails in their official capacity. *Id.* With respect to the third parties whose names and addresses have been redacted, the plaintiff also claims that "Exemption 6 cannot validly be invoked to hide the names of third parties who have communicated with the DEA regarding hemp policy or regulations." *Id.* The plaintiff contends that "there is a substantial public interest in knowing who is submitting comments, inquiries or requests for action or guidance, to DEA, concerning hemp policy and regulations." *Id.*

On the other hand, the defendants claim that the definition of "similar files" "clearly encompasses the names of individuals—including third parties, federal employees, and law enforcement officials—and other

information that would directly or indirectly identify those individuals as the subject of such records, as well as personal information such as those individuals' street address[es] or social security number[s]." *Id.* at 9–10. The defendants claim that "the information being withheld is the touchstone of information associated with particular individuals, *i.e.*, names, home and work addresses, and phone numbers of individuals." Defs.' Reply at 8. Moreover, according to the government, the "disclosure of such information readily implicates an individual's privacy interest in controlling 'information concerning his or her person which is not freely available.'" *Id.* at 8–9 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). Therefore, the DEA concludes that "the individuals whose information was withheld here have a privacy interest in keeping that material redacted, and that [their] privacy interest[s] must be balanced against the public's interest in disclosure to determine if the redactions were proper." Defs.' Reply at 9.

As an initial matter, this Court must assess whether the information sought by the plaintiff qualifies as "personnel and medical files and similar files." *Wash. Post*, 456 U.S. at 602, 102 S.Ct. 1957. The Court is not convinced that the redacted information falls within the purview of Exemption 6. First, the information that has been redacted by the DEA does not amount to personal information about government officials or other third parties. The information merely identifies the names of government officials who au-

---

6. The documents produced, but partially redacted under Exemption 6 and the corresponding Bates numbers are: 342–343, 387–388, 390, 391, 420–421, 423, 424–425, 427, 513–514, 516–521, 522–525, 529–530, 542– 543, 569–570, 613, 619–620, 652, 653, 654, 655, 678–679, 680–682, 683–686, 687, 729, 762–766, 767–769, and 771–772. Defs.' Reply at 6 n. 2.

thored documents and received documents from third parties concerning hemp. As such, the information also fails to qualify as personnel and medical files.

■ Whether this information fits into the definition of "other files" is questionable at best. "In considering the scope of the 'similar files' language in Exemption 6, the Supreme Court has made clear that information that 'applies to a particular individual' may qualify for protection." *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C.Cir.2002) (quoting *Wash. Post,* 456 U.S. at 602, 102 S.Ct. 1957). The majority of courts "interpreting the [similar files] phrase have considered primarily government files that were maintained on a specific individual or group." *Norton,* 309 F.3d at 32–33. *See, e.g., Reporters Comm.,* 489 U.S. at 749, 109 S.Ct. 1468 (request for FBI "rap sheets" which were criminal records that identified particular individuals); *Ray,* 502 U.S. at 166, 112 S.Ct. 541 (request for information on Haitian nationals who were involuntarily returned to Haiti after a failed attempt to emigrate illegally to the United States); *N.Y. Times v. NASA,* 920 F.2d 1002, 1005 (D.C.Cir.1990) (interpreting "similar files" broadly to encompass a recording of a person's "voice inflection at a particular moment," which the court viewed as highly "personal information" pertaining to specific individuals.) Here, the information sought by the plaintiff is not information that would normally be described as "detailed government records on an individual." *Norton,* 309 F.3d at 33 (citation omitted). The subject of the plaintiff's FOIA request is not concerned with personal information about the individual employees and third parties, but rather information that the DEA has pertaining to hemp. Indeed, the plaintiffs are not requesting specific information about any individuals. It is therefore the Court's conclusion that

the redacted names of DEA employees are not similar files under Exemption 6. *See, e.g., LaRouche v. United States Dep't of Justice,* No. 90–2753, 1993 WL 388601, at *12 (D.D.C. June 25, 1993) (the names of non-decision making government employees were not protected from disclosure pursuant to Exemption 6 because the government did not meet the heightened burden of demonstrating that Exemption 6 permits the withholding of names of non-decision making government employees). On the other hand, the names and addresses of other third parties contained in the responsive documents constitute similar files under Exemption 6. Notwithstanding, "[t]he release of names and addresses in government files 'is not inherently and always a significant threat to privacy,' but rather 'the privacy threat depends on the individual characteristics that the disclosure reveals and the consequences that are likely to ensue.' " *Hertzberg v. Veneman,* 273 F.Supp.2d 67, 86, (D.D.C.2003) (quoting *Norton,* 309 F.3d at 36).

■ In any event, even if all of the information qualified as "similar files," the Court would nonetheless have to conduct "the balancing of private against public interests," because it is this analysis and "not the nature of the files in which the information was contained [that] should limit the scope of the exemption." *Wash. Post,* 456 U.S. at 599, 102 S.Ct. 1957 (citing S.Rep. No. 89–813, at 9 (1965)). "To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure 'would compromise a substantial, as opposed to a *de minimis,* privacy interest.' " *Norton,* 309 F.3d at 33 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 874 (D.C.Cir.1989)). "If a significant privacy interest is at stake, the court then must weigh that interest

'against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" *Id.* (citations omitted) "The public interest to be weighed in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contributing significantly to public understanding of the operations or activities of the government." *Id.* (internal quotations and citation omitted). Thus, "[t]he only public interest to be considered under the FOIA is the extent to which disclosure 'advances the citizens' right to be informed about what their government is up to.'" *Hertzberg,* 273 F.Supp.2d at 87 (quoting *Norton,* 309 F.3d at 34) (internal quotations omitted).

Here, the DEA maintains that "the individuals whose information was withheld have a privacy interest in keeping that material redacted, and that privacy interest must be balanced against the public's interest in disclosure to determine if the redactions were proper." Defs.' Reply at 9. On the other hand, the plaintiff argues that "the names of the employees [and third parties] are necessary in each case, in order to understand either what the document is about and/or who was involved in the discussions and decision making processes reflected in the documents." Pl.'s Reply at 7 "[T]he privacy interest in such 'nonintimate information about a particular individual,' like the names of the employees here, are '*de minimis.*'" *Hertzberg,* 273 F.Supp.2d at 86 (quoting *Wash. Post,* 456 U.S. at 601, 102 S.Ct. 1957, and *Horner,* 879 F.2d at 877). Significant to the Court's analysis is the fact that the names and addresses of the employees and third parties are not the focus of the FOIA request. The privacy interests of the employees being *de minimis,* the question therefore is whether disclosure of the names and addresses of the government employees and third parties would "contribute significantly to public understanding of the operations or activities of the government." *Id.* at 84 (citations omitted). And the Court concludes that such disclosure would not contribute significantly to the public's understanding of the operations or activities of the government relating to hemp policy. The purpose of the FOIA "is not fostered by disclosure of information about private citizens [and government employees] . . . that reveals little or nothing about an agency's own conduct." *Id.* at 87 (citing *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468). Here, the substantive content of the letters, facsimile cover sheets or e-mails have been provided to the plaintiff. This "Court can see no public interest in the disclosure of names [of the government employees or third parties]" because this information does not shed light on agency action. *Id.* And to the extent the information with the redacted names and addresses "sheds light on agency action, [the] plaintiff already possesses that information." *Id.* In other words, the names and addresses of government employees or third parties would not shed any more light on the subject at issue, beyond the information already in the plaintiff's possession. Moreover, the plaintiff has not demonstrated how knowledge of the name and addresses of government officials and third parties would actually contribute to their understanding of the defendants' decision-making process. Therefore, because this Court is unpersuaded that the redacted information is necessary for the plaintiff to understand what the documents are about or who was involved in the discussions and decision-making processes reflected in the documents, the redacted information is protected from disclosure pursuant to Exemption 6 of the FOIA.

## 2. Exemption 2

■ Exemption 2 of the FOIA exempts from disclosure documents that are "related solely to the internal personnel rules and practices of an agency[.]" 5 U.S.C. § 552(b)(2). Courts have applied Exemption 2 to two categories of information: "Low 2" exemptions, which include "trivial administrative data such as file numbers, mail routing stamps, initials, data processing notations, and other administrative markings. . . ." *Coleman v. FBI*, 13 F.Supp.2d 75, 78–79 (D.D.C.1998) (citing *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472 (D.C.Cir.1980)). The second category, classified as " 'high 2' exemptions, involve[ ] predominately internal documents the disclosure of which would likely circumvent agency regulations and statutes." *Id.* (citing *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C.Cir.1981)).

Citing Exemption 2, the DEA has withheld several categories of information. Defs.' Mem. at 14. The withheld information includes "internal DEA numbers, DEA administrative procedures, administrative information, internal tracking information, routing blocks, and administrative instructions (*i.e.* notes on documents instructing one office to respond)." *Id.* (citing Little Decl. ¶¶ 58–60). The DEA explains that all of these categories are exempt from disclosure under the "low 2" exemption. The DEA concludes that

"[b]ecause none of these administrative categories go to the substance of any DEA decision regarding hemp, they are exempt from disclosure under [E]xemption b(2)." *Id.* at 15 (citing Little Decl. ¶¶ 58–60) [7]

On the other hand, VoteHemp contends that the information withheld "is not even a personnel rule or internal practice, and thus does not remotely come 'within the statutory language [of Exemption 2].' " Pl.'s Mem. at 19 (quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 831 (D.C.Cir.1983)). Specifically, the documents that the plaintiff takes issue with are documents Bates stamped 36, pp. 527–28 and have the notation on them, "draft response to petition regarding CSA control of hemp." Pl.'s Mem. at 14. Similarly, the plaintiff takes issue with document Bates stamped 50, pp. 751–752 and described as " 'Instigation of memorandum of understanding' regarding a hemp research project." Pl.'s Mem. at 19. The plaintiff lists several other documents purportedly covered by Exemption 2, namely, document no. 52, pp. 754–57, document no. 55, p. 776, document no. 57, p. 884, document no. 58, p. 885, document no. 60, pp. 893–94, document no. 61, p. 897, document no. 63 (for which no Bates range of documents was provided), document no. 64, p. 919, document no. 66, p. 923, document no. 71, pp. 1015–16, and document no. 75, pp. 1022–25. Pl.'s Mem. at 19–20.[8]

---

**7.** The DEA claims that the following Bates stamped documents are exempt from disclosure under Exemption (b)(2) of the FOIA: 1, 240, 265, 283, 407, 428, 431, 433, 437, 452, 470–471, 515, 568, 571, 576, 577, 578, 580, 659, 663, 666, 667, 753, 759, 776, 777, 884, 886, 919, 921, 923, 925–926, 928, and 982. Documents Bates stamped 1, 452, and 753 are also being withheld pursuant to Exemption 5 of the FOIA. Little Decl. ¶ 60 at 17. The court notes that the Little Declaration has two paragraphs numbered 60. Paragraph 60

referred to here is found on page 17 of the Little Declaration.

**8.** Based on the DEA's explanation regarding the exemption of certain documents and the misclassification of certain documents, the plaintiff no longer challenges the withholding of the following documents: 36 pp. 527–28; 50, pp. 751–52; 52, pp. 754–57; 55, p. 776; 64 p. 919; 57, p. 884; 58, p. 885; 61, p. 897; 71, pp. 1015–16; and 71, pp. 1022–25. Pl.'s Reply at 10–11, 17.

With respect to document no. 60, pp. 893–94, the DEA contends that this document is an "internal memo from an unidentified DEA scientist regarding a proposal to create a methodology for quantifying THC in edible hemp." Defs.' Reply at 20 (citing Suppl. Little Decl. ¶ 63.). The DEA contends that this document satisfies the high (b)(2) criteria as it concerns internal procedures for certifying a *future* testing procedure and does not regulate members of the public or set out any standards to be followed before taking action against the public. *Id.*

The plaintiff, on the other hand, argues for several reasons that "the 'high 2' exemption is not applicable to document [no. 60, pp.] 893–94." First, the plaintiff claims that "there is no possibility that disclosure of any methodology for testing the quantity of THC in hemp would risk circumvention of any agency regulation or statute because there is no such regulation or statute...." Pl.'s Reply at 11. Second, the plaintiff claims that "it is apparent that this document does not contain a list of criteria that should be met by any testing methodology that might be approved in the future." *Id.* at 12. And third, "even to the extent this document does prescribe or discuss a future methodology, ... understanding the nature of that methodology would ... enable producers and sellers of hemp products to comply with the law, not evade it." *Id.*

 Under Exemption 2, the government is not required to disclose information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Only information that is "used for predominantly internal purposes" is protected under Exemption 2. *Crooker,* 670 F.2d at 1073. Information is "predominantly internal" if it does not "purport to regulate activities among members of the public [or] set standards

to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public." *Id.* at 1069. If the "predominantly internal" test is met, an agency may withhold material if it shows that "either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest." *Schiller v. NLRB,* 964 F.2d 1205, 1207 (D.C.Cir.1992) (citation omitted). Predominantly internal documents that fall into the first category are protected by the "high 2" exemption; those in the second category are protected by the "low 2 exemption" *Id.*

Here, the DEA has met the criteria for asserting the "high 2" exemption. The DEA clearly states that the document "concerns internal procedures for certifying a future testing procedure" Defs.' Reply at 20. Moreover, the DEA's assertion that release of the document could "significantly risk future circumvention of federal drug control regulations ...," *id,* certainly justifies the withholding of this document under the "high 2" exemption. Accordingly, document no. 60, pp. 893–894 is properly exempt from disclosure.

With respect to document no. 66, p. 923, the DEA maintains that this document is also properly withheld under Exemption 2. The document is described as a Controlled Substance Act Master Query printout listing the DEA registrations of one police department, an organization that trains drug dogs, and one individual. Defs.' Reply at 20 (citing Suppl. Little Decl.¶ 64). The defendants claim that this type of information is routinely protected under Exemption 2, citing *Judicial Watch, Inc. v. United States Dep't of Commerce,* 83 F.Supp.2d 105, 110 (D.D.C.1999). Defs.' Reply at 20. The plaintiff agrees, and is not seeking any actual "registration num-

bers." Pl.'s Reply at 14. However, the plaintiff is seeking the identity of those to whom registrations are issued to import or manufacture controlled substances. *Id.* The plaintiff contends that this information is a matter of public record. *Id.* The plaintiff is correct in this regard. Indeed, the DEA is required to publish in the Federal Register a notice naming applicants who seek to register or reregister to "manufacture in bulk a basic class of controlled substances listed in Schedule I or II" of the Uniform Controlled Substances Act, 21 U.S.C. § 823; 21 C.F.R. § 1301.33; Pl.'s Reply at 14. However, based on the information provided by the DEA, this court is unable to determine whether the registrations actually pertain to applications for registration or reregistration to manufacture in bulk controlled substances listed in Schedule I or II. Accordingly, this Court must defer a ruling with respect to document no. 66, p. 923 until the DEA provides more information concerning whether the registrations pertain to the class of controlled substances listed in Schedule I or II. The Court will then make a determination as to whether document 66, p. 923 is properly exempt from disclosure.

VoteHemp also challenges the withholding of many other documents based on Exemption 2, to which the DEA responds that the information "consists of substantive directions as to how a matter should be handled." Pl.'s Mem. at 21. The Bates stamped document numbers and corresponding page numbers of these documents are: document no. 14, p. 389; document no. 15, p. 407; document no. 16, pp. 414–17; document no. 17, p. 428; document no. 19, p. 432; document no. 35, p. 151; document no. 38, p. 571; document no. 39, p. 576; document no. 40, p. 577; document no. 41, p. 578; document no. 44,

p. 659; document no. 53, p. 759; document no. 56, p. 777; document no. 67, p. 924; document 4, page 240; and document no. 9, p. 283. *Id.* The plaintiff contends that none of the descriptions indicate that the directions are "trivial administrative matters." *Id.; see, e.g.,* Little Decl., Ex. Y (describing document 14, p. 389 as "Administrative instructions forwarding citizen letter for response"). The plaintiff also objects to document nos. 4, p. 240 and 9, p. 283 because the descriptions of the documents "merely parrot" the statutory language in conclusory terms. Pl.'s Mem. at 22.

The defendants respond that the first set of documents being challenged by the plaintiff consists of 14 documents, namely, document nos. 389, 407, 414–17, 428, 432, 515, 571, 576, 577, 578, 659, 759, 777, and 924. Defs.' Reply at 21 n. 4. The defendants contend that these documents are routing slips, in some cases a form and in others a memo or letter, in which one office forwards a piece of correspondence to another office requesting a response. *Id.* (citing Suppl. Little Decl. ¶ 66). The defendants note that in 12 of the 14 documents, nothing substantive is discussed. *Id.* It explains that these documents are the "typical administrative routing function that occurs everyday within any organization which lies at the core of low (b)(2) exemption's coverage of trivial matters." Defs.' Reply at 22. Similarly, the defendants point out that document 659 "merely forwards a piece of correspondence from one office to another for [a] response and contains no 'substantive' instructions." *Id.* However, it does contain some handwriting that could reveal certain procedures that were applied to an item forwarded to the DEA by the correspondence. Accordingly, the defendants maintain that this document is exempt from disclosure under the

"high 2" exemption. *Id.*[9]

The second category of documents amounts to two pages. *Id.* The defendants posit that document nos. 240 and 243 also fit within the realm of documents withheld pursuant to Exemption 2 because they are "merely routing documents." *Id.* at 23 (citing Suppl. Little Decl. ¶ 69). The DEA explains that no substantive instructions were included in these documents either. *Id.*

█ As previously noted, the government is not required to disclose information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). And, information that is "used for predominantly internal purposes" is protected under Exemption 2. *Crooker*, 670 F.2d at 1073. Information is "predominantly internal" if it "does not purport to regulate activities among members of the public [or] set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public." *Cox v. U.S. Dept. of Justice*, 601 F.2d 1, 5 (D.C.Cir.1979). This Court is satisfied that the documents for which Exemption 2 status has been asserted is correct, and the Little Declaration is further support for this position. Accordingly, document nos. 389, 407, 428, 432, 515, 571, 576, 577, 578, 659, 759, 777, and 924 were properly withheld under Exemption 2.

### 3. Exemption 5

█ Exemption 5 provides that the "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure. 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). The threshold issue that must be addressed when Exemption 5 is asserted is whether the records in question qualify as "interagency or intraagency memorand[a]." *Judicial Watch, Inc. v. United States Dep't of Commerce*, 90 F.Supp.2d 9, 13 (D.D.C. 2000). "With respect to the secondary consideration under Exemption 5—whether such materials would not be 'available by law in litigation with the agency,' " *id.*, "the parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery . . . ." *Burka v. United States Dep't of Health & Human Serv.*, 87 F.3d 508, 516 (D.C.Cir. 1996). Thus, if a document requested pursuant to the FOIA would normally be disclosed in civil discovery, it must also be disclosed under the FOIA. *Id.* Conversely, information that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5. *Id.* Moreover, "to justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." *Id.* at 517. Thus, courts have incorporated

---

9. With respect to document 414–417, the defendants have amended its classification of this document and now contend that it is also exempt under Exemption 7(e), which "protects information which would disclose techniques and procedures for law enforcement investigations." Defs.' Reply at 22 n. 7 (quoting 5 U.S.C. § 552(b)(7)(e)) Based on the DEA's reclassification of the nature of document 414–417, VoteHemp is no longer contesting the withholding of this document. Pl.'s Reply at 14.

three traditional civil discovery privileges into Exemption 5: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862, 866 (D.C.Cir.1980).

■■■■ The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Klamath*, 532 U.S. at 8, 121 S.Ct. 1060, 149 L.Ed.2d 87. The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public. *Defenders of Wildlife v. U.S. Dep't of Agric.*, 311 F.Supp.2d 44, 57 (D.D.C.2004) (citations omitted). Thus, when a court reviews whether an agency properly withheld documents under the deliberative process privilege, the critical question to ask is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Instit. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1121–22 (D.C.Cir.1989); *see also Sears*, 421 U.S. at 151, 95 S.Ct. 1504 (noting that the main purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions").

■■■■ To be exempt from disclosure under the deliberative process privilege, the agency must show that its decision is both (1) predecisional and (2) deliberative.

*Norton*, 309 F.3d at 39. "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made.'" *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C.Cir.1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). The decision must therefore be "[a]ntecedent to the adoption of an agency policy." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir. 1978). However, a document cannot be characterized as predecisional "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. Examples of predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

■■■■ A document is deliberative if the "materials ... bear on the formulation or exercise of agency policy-oriented judgment." *Petroleum Info. Corp.*, 976 F.2d at 1435. The information must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). Most importantly, the document must reflect the "give-and-take of the consultative process." *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 585 (D.C.Cir.1987). Other factors bear on whether a document is "deliberative." In determining whether the deliberative process privilege should apply to a particular document, courts often look at "the nature of the decision making authority vested in the officer or person issuing the disputed

document, and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." *Animal Legal Defense Fund, Inc. v. Dep't of the Air Force*, 44 F.Supp.2d 295, 300 (D.D.C.1999) (quoting *Puerto Rico*, 823 F.2d at 586). Although there are many cases in this Circuit which discuss the deliberative process privilege, these cases "are of limited help ... because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Coastal States*, 617 F.2d at 867.

■ The defendants have claimed Exemption 5 as the basis for withholding a number of documents in their entirety. Pl.'s Mem. at 22. There are five documents which the defendants continue to withhold in their entirety under Exemption 5 based on the deliberative process privilege. Pl.'s Reply at 15. These are documents 884, 893–94, 265, 389, and 452.[10] With respect to document 884, the DEA asserts that the document is predecisional. Defs.' Reply at 25. The description of the document explains that the memorandum "responded to inquires about controlled substances, threshold, and detection standards." *Id.* Implicit in the description, the defendants contend, is that "a predecisional question was asked by the Administrator concerning these issues, a question to which the recommendations and analysis contained in or forwarded by this memo would respond." *Id.* On the other hand, the plaintiff contends that nothing in this description establishes that this document was "predecisional" or "deliberative" in nature. Pl.'s Reply at 16. The Court agrees with the plaintiff. This result is called for

because there is no indication that this document was "prepared in order to assist an agency decisionmaker in arriving at his decision...." *Petroleum Info. Corp.*, 976 F.2d at 1434. Nor does the defendants' description of the document indicate that it is "antecedent to the adoption of agency policy." *Jordan*, 591 F.2d at 774. Accordingly, the defendants have not demonstrated that document 884 in its entirety is exempt from disclosure under Exemption 5.[11] Therefore, the defendants must produce a revised *Vaughn* index, within 30 days from publication of this Memorandum Opinion demonstrating that document no. 884 assisted any agency decisionmaker in arriving at his decision and that it was antecedent to the adoption of agency policy. Otherwise the document must be disclosed.

■ With respect to document 265, the defendants claim that this document was properly withheld under Exemption (b)(5) because it constituted administrative information specifically discussing "a DEA attorney's legal analysis of a draft document." Defs.' Reply at 26. Accordingly, the defendants assert that this document is protected under Exemption 5 since it is privileged under both the deliberative process and attorney client privileges. *Id.* Again, for a document to be withheld under the deliberative process privilege, it must reveal "a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8, 121 S.Ct. 1060, 149 L.Ed.2d 87. Here the defendants' description of the document does not indicate that it is exempt from disclosure because of the deliberative process. With respect to the attorney-client privi-

---

**10.** With respect to document 893–94, the Court has already held that it was properly withheld under Exemption 2. Therefore, the Court will not address whether this document is also covered by Exemption 5.

**11.** The Court previously ruled that the redacted material in this documents was properly withheld under Exemption 6.

lege, this "privilege has a proper role to play in exemption five cases...." *In re Lindsey,* 158 F.3d 1263, 1269 (D.C.Cir. 1998). Aside from the protections provided by attorney-client privilege in the private sector, "the privilege also functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the private sector." *Id.* Thus, when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors," Exemption 5 applies. *Id.* (quoting *Coastal States,* 617 F.2d at 863). Exemption 5 "protect[s] documents containing advisory opinions and recommendations or reflecting deliberations comprising the process by which government policy is formulated." *Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977). To invoke the attorney-client privilege, an agency must show that the document "(1) involves 'confidential communications between an attorney and [their] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d 252, 267 (D.D.C.2004) (quoting *Mead Data,* 566 F.2d at 252). However, the attorney-client privilege does not give the agency the ability "to withhold a document merely because it is a communication between the agency and its lawyers." *Id.* The agency must show that the information provided to its lawyers was intended to be confidential and was not disclosed to any third party. *Id.*

Here, the defendants describe document 265 as "an undated handwritten note between two DEA staff who are identified by their first names only." Defs.' Reply at 26

(citing Suppl. Little Decl. ¶ 71). "The note specifically discusses a DEA attorney's legal analysis of a draft document." *Id.* From the defendants' description of the note, it appears to contain legal analysis by counsel for the DEA, which possibly could be entitled to protection by the attorney-client privilege. However, the defendants' description of the document falls short of indicating whether the information was intended to be confidential and was not disclosed to any third party. *Judicial Watch,* 297 F.Supp.2d at 267. Accordingly, the defendants must produce a revised *Vaughn* index, within 30 days from publication of this Memorandum Opinion, indicating whether the information was intended to be confidential and has not been disclosed to a third party or otherwise made public.

■■■ With respect to document 389, the defendants invoked several exemptions as grounds for non-disclosure of this document, namely, Exemptions 2, 5, and 6. Little Decl., Ex. X. This document is a memorandum forwarding a piece of citizen correspondence from the Department of Justice Environmental and Natural Resource Division ("ENRD") to the Chief of the Drug and Chemical Evaluation Section at the DEA. Defs.' Reply at 26. The defendants claim that Exemption 5 covers this document because "one sentence in this forwarding memo could be viewed as expressing ENRD's opinion on the substance of the citizen correspondence...." *Id.* The Court fails to see how the description of this document demonstrates its entitlement to nondisclosure under Exemption 5. From the description, this document does not appear to be predecisional or deliberative. As previously discussed, when reviewing whether an agency properly withheld documents under the deliberative process privilege, the critical question is whether "disclosure of [the]

materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Instit.*, 889 F.2d at 1121–22; *Sears*, 421 U.S. at 151, 95 S.Ct. 1504. Here, the defendants have not carried their burden of demonstrating that this document could undermine the agency's ability to perform its functions. Indeed, the document does not even reflect any opinions with respect to any decisionmaking process of the DEA. Rather, the document "could be viewed as expressing ENRD's opinion of the substance of the citizen correspondence." Defs.' Reply at 26. Accordingly, the defendants must produce a revised *Vaughn* index, within 30 days from publication of this Memorandum Opinion, specifically indicating its applicability to Exemption 5.

█ With respect to document 452, the defendants explain that this document is know as an Executive Secretariat Control Sheet, which is a formal type of routing slip for transferring documents between senior department managers and administrators for action. Defs.' Reply at 27 (citing Suppl. Little Decl. ¶ 73). The defendants also invoke the low (b)(2) and (b)(6) exemptions as grounds for not disclosing this document. Defs.' Reply at 27. However, the defendants also allege that Exemption 5 "cover[s] two paragraphs that discussed the subject of what was being forwarded on the draft document to the Attorney General." *Id.* Based on this description, this document is protected from disclosure under the deliberative process. As noted above, the deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated."

*Klamath*, 532 U.S. at 8, 121 S.Ct. 1060, 149 L.Ed.2d 87. Indeed, the very purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public. *Defenders of Wildlife* 311 F.Supp.2d at 57. The description of document 452 clearly establishes that this document promotes these objectives. Accordingly, this document is exempt from disclosure pursuant to Exemption 5.

### D. Segregability

█ The plaintiff argues that the withholding of three documents in their entirety by the defendants was improper because they contain segregable material even if they otherwise contain information that is exempt from disclosure under Exemption 5. These documents are 351–53, 386 and 438–51. Document 351–53 is a memorandum from a DEA science specialist to a DEA manager written in response to several questions regarding the THC content of hemp and contains nothing more than the scientist's analysis and scientific opinion. Defs.' Reply at 28 (citing Little Suppl. Decl. ¶ 75). The defendants' contend that "to the extent that such segregable facts exist in this document, they are so integrated or intertwined with the analysis that they cannot be excised and released." *Id.* The defendants state that document 386 "is another memo on the same two individuals [referred to in document 351–353]." *Id.* (citing Little Suppl. Dec. ¶ 76). Document 438–51 is described by the defendants as "a draft research report prepared by a contractor for the DEA concerning economic analysis of hemp cultivation." *Id.* (citing Little Suppl. Decl. ¶ 77). The DEA states that most of the report contains analysis and

recommendations protected under Exemption 5. *Id.* Moreover, they contend that to the extent that there are facts that could be segregated, they are also exempt because the facts are part of the deliberative process. Defs.' Reply at 28.

 "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead*, 566 F.2d at 260. Section 552(b) of the FOIA incorporates this requirement into the Act, and provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). To satisfy its burden of "demonstrat[ing] that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability.... However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C.Cir.2002).

Here, the agency's segregability explanation is wholly insufficient. The defendants' mere parroting of the FOIA's statutory language—that the material is integrated or intertwined with the analysis that they cannot be excised and released—is not in compliance with a withholding agency's obligation to "supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Animal Legal Defense Fund, Inc.*, 44 F.Supp.2d at 301. The defendants contend in this case that "to the extent that there are facts that could be segregated, they are also exempt because the facts are part of the deliberative pro-

cess." Defs.' Reply at 28. As previously noted, when reviewing whether an agency properly withheld documents under the deliberative process privilege, the critical question is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Instit.*, 889 F.2d at 1121–22; *Sears*, 421 U.S. at 151, 95 S.Ct. 1504. Thus, because the defendants claim that the information contained in these documents could not be segregated from material that is protected from disclosure under the deliberative process privilege, the defendants must overcome two hurdles. First, the defendants must demonstrate that the documents are exempt from disclosure pursuant to Exemption 5, *e.g.*, whether the disclosure would expose an agency's decisionmaking process. And second, the defendants must specifically demonstrate that the exempt portions of the documents are inextricably intertwined with non-exempt portions of the documents. *Animal Legal Defense Fund, Inc.*, 44 F.Supp.2d at 301. The court concludes that the defendants have failed in both respects, having failed to demonstrate that these documents are protected from disclosure pursuant to either the deliberative process or the attorney client privileges, and having failed to provide detailed justifications explaining why non-exempt portions of the documents cannot be disintegrated from the alleged exempt portions. Accordingly, because the defendants have not demonstrated that document nos. 351–353, 386 and 438–451 were properly withheld pursuant to Exemption 5, their claim of non-segregability with respect to these documents must fail. Consistent with this court's previous ruling, the defendants will have 30 days to produce a

revised *Vaughn* index providing more detailed information about these documents. Specifically, the defendants must demonstrate that these documents are properly exempt from disclosure under Exemption 5, and then correlate that claim with the other parts of the withheld documents to which it applies showing why separation of the non-exempt information is impossible. Otherwise, the documents must be released within the 30 day period.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment and the Plaintiff's Cross Motion for Summary Judgment are both granted in part and denied in part, and the defendants are ordered to act in accordance with the rulings set forth in this opinion.[12]

12. An Order consistent with this Memorandum Opinion was issued on September 30, 2004.